**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

```
                                  :
EMANUEL H. SIMMONS,               :
                                  :    CIVIL ACTION NO. 04-4865 (MLC)
     Plaintiff,                   :
                                  :       MEMORANDUM OPINION
     v.                           :
                                  :
B. VALENTINO, et al.,             :
                                  :
     Defendants.                  :
                                  :
```

**COOPER, District Judge**

The defendant Jose Tirado ("Tirado") moves for summary judgment in his favor, pursuant to Federal Rule of Civil Procedure ("Rule") 56(c). (Dkt. entry no. 17.) Tirado contends that the plaintiff pro se, Emanuel H. Simmons (the "plaintiff"), (1) failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), and (2) failed to produce any evidence that Tirado assaulted him on August 24, 2004. The defendants B. Valentino ("Valentino") and L. Hunnenloch ("Hunnenloch") separately move for summary judgment in their favor for failure to exhaust administrative remedies. (Dkt. entry nos. 18 & 19.)[1] The plaintiff has not opposed the motions.[2] The Court, for the reasons stated herein, will (1)

---

[1] Hereinafter, Tirado, Hunnenloch, and Valentino are collectively referred to as the "defendants."

[2] The return date on Tirado's motion was May 1, 2006. Therefore, pursuant to Local Civil Rule 7.1(d)(2), the plaintiff's opposition papers were due on or before April 17,

grant without prejudice the part of Tirado's motion seeking summary judgment for the plaintiff's failure to exhaust administrative remedies, (2) deny the part of Tirado's motion seeking summary judgment for the plaintiff's failure to adduce evidence that Tirado assaulted him on August 24, 2004, as moot, and (3) grant without prejudice the separate motions by Hunnenloch and Valentino.

### BACKGROUND

The plaintiff is a former prisoner who, beginning on April 29, 2004, was incarcerated in the Monmouth County Correctional Institution ("MCCI") while serving a 3-year sentence for third-degree eluding.  (4-7-06 Certification of Leslie Koch ("Koch Cert."), at ¶ 2 & Ex. A, 11-22-05 Pl. Dep. Tr. ("Pl. Dep. Tr."), at 19-20.)[3]  The plaintiff alleges that he suffers from sickle cell anemia.  (Koch Cert., at ¶ 3 & Ex. B, Compl. at 6; Pl. Dep. Tr., at 27-28.)  The plaintiff also claims that

> [o]n the date of [August 24, 2004] at 9:20 a.m.[, he] was let out of [his] cell for [his] regular hour out.

---

2006.  The Court, in an excess of caution, has delayed deciding the motions for an additional three weeks to allow for a late response from the plaintiff.

[3] The plaintiff was transferred on April 27, 2005, from MCCI to the Central Reception and Assignment Facility in Trenton ("CRAAF").  (Pl. Dep. Tr., at 19.)  The plaintiff was transferred from CRAAF to the Southern State Correctional Facility ("SSCF") where he was incarcerated from May 2005 until September 2005. (Id. at 20.)  He was then transferred to the New Jersey State Prison ("NJSP") for 35 days, and was thereafter transferred to the Bayside State Prison ("BSP").  (Id.)

2

> [He] immediately went to the main unit door to let . . . Valentino know that [he] require[d] medical attention. After numerous attempts because [he] was being ignore[d], . . . Valentino responded [with] abusive language[,] entered the unit[,] and ordered [him] to [go] back in [his] cell. . . . Valentino was then accompanied [by] . . . Tirado and Hunnenloch. [The plaintiff] was escorted to [his] cell by all 3 officers and while on the way to [his] cell . . . Valentino threaten[ed] to cause [him] bodily harm. Once [he] was in [his] cell, . . . Valentino struck [him] to [his] head causing [him] to fall to [the] cell floor. . . . [T]hen all 3 officers[, Valentino, Tirado, and Hunnenloch,] rushed in and immediately began to stomp and kick [his] . . . head and body.

(Id.)[4]

The plaintiff wrote to Internal Affairs and Captain Bongiovi on August 24, 2004, regarding the alleged incident. (Koch Cert., at ¶ 5 & Ex. D, 8-24-04 Letter to Captain Bongiovi, 8-24-04 Letter to Internal Affairs (collectively the "Letters"); Pl. Dep. Tr., at 24-25.)[5] The plaintiff wrote to Captain Bongiovi because an inmate paralegal suggested that he do so. (Pl. Dep. Tr., at 26.)[6] In the Letters, the plaintiff states, inter alia, that (1) he submitted a grievance form about the corrections officers' alleged failure to take a head count on the morning of August 24, 2004; (2) he immediately went to the main unit door — as required by "page 13 number 2 under health and personal hygiene" of the

---

[4] The plaintiff was in protective custody at this time. (Pl. Dep. Tr., at 28.)

[5] The Letters are virtually identical.

[6] The plaintiff never received a reply from Captain Bongiovi. (Compl., at 5.)

Inmate Handbook — upon being let out of his cell to inform the corrections officers that he required medical attention; (3) "the [corrections] officers denied [him his] right to shower, and a regular exercise period as stated in the inmate handbook on page 18 under inmate 'Rights' number 4;" (4) he did not receive medical attention after the alleged altercation with the defendants until that afternoon; and (5) he "submitted a grievance to the assault in which [he] still have not receive a response . . . yet." (Id.)

The plaintiff prepared and signed the "Form to be Used by a Prisoner in Filing a Civil Rights Complaint" on August 28, 2004. (Koch Cert., at Ex. B.)[7]  The plaintiff asserts claims against the defendants under 42 U.S.C. § 1983.  (Id.)[8]  The plaintiff further claims that he (1) previously "submitted a grievance form [for] the assault [to] which [he] did not receive a response," and (2) "wrote Internal Affairs and Captain Bongiovi about the assault as well."  (Id.)[9]  However, he also states that he did

---

[7] The plaintiff filed the complaint on October 4, 2004. (Dkt. entry no. 1.)

[8] The plaintiff presumably asserts an Eighth Amendment claim; however, he fails to specifically identify any constitutional violation in the complaint.

[9] Internal Affairs did conduct an investigation of the alleged assault, but terminated it because the plaintiff had filed a civil rights complaint.  (Koch Cert., at ¶ 6 & Ex. E, 10-28-04 Memorandum from Senior Investigator Corbiscello.)

not exhaust available administrative remedies. (Id.)[10] Tirado moves for summary judgment, arguing that the plaintiff failed to (1) exhaust his administrative remedies as required by the PLRA; and (2) provide evidence to support his claim that Tirado assaulted him on August 24, 2004. (Tirado Br., at 9, 19.) Hunnenloch and Valentino join in the part of the argument concerning the failure to exhaust.

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A non-movant must present actual evidence that raises a genuine issue of material fact and

---

[10] Specifically, the plaintiff claims that "[he does not] know why [he did not exhaust his administrative remedies,] [b]ut [he] . . . filed criminal charges [s]ince [he is] not getting any administrative remedies." (Id.)

may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

6

If the non-movant fails to oppose the motion, Rule 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate." See, e.g., Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990); see also Damino v. Sony Music Entm't, 975 F.Supp. 623, 627 (D.N.J. 1996) (granting summary judgment because plaintiff's argument was unopposed, and thus no genuine issue of material fact was created). The motion is appropriately granted when that party is entitled to judgment as a matter of law. Anchorage Assocs., 922 F.2d at 175.

When, as here, "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Carp v. Internal Revenue Serv., No. 00-5992, 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002) (citations and quotations omitted). Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D. Pa. Mar. 1, 1989); see also Atkinson v. City of Phila., No. 99-1541, 2000 WL 793193, at *5 n.8 (E.D. Pa. June 20, 2000).

## II. The Exhaustion Of Administrative Remedies

### A. The Exhaustion Requirement Under the PLRA

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).[11]  The exhaustion of all administrative remedies is mandatory, even if (1) the prisoner believes such administrative remedies to be ineffective, or (2) the available administrative process cannot grant the desired remedy.  Booth v. Churner, 532 U.S. 731, 739-41 (2001); see Porter v. Nussle, 534 U.S. 516, 524 (2002) (explaining that (1) "exhaustion in cases covered by [section] 1997e(a) is . . . mandatory," (2) "[a]ll available remedies must . . . be exhausted," and (3) the remedies need "not meet federal standards, nor must they be plain, speedy, and effective").  Therefore, to comply with the PLRA, a prisoner must "properly (i.e., on pain of procedural default) exhaust administrative remedies as a prerequisite to a suit in federal court."  Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004).

---

[11] Failure to exhaust administrative remedies is an affirmative defense and the defendants "have the burden of pleading and proving the defense in a motion for summary judgment or at trial."  Kounelis v. Sherrer, No. 04-4714, 2005 WL 2175442, at *6 (D.N.J. Sept. 6, 2005) (citing Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004)).

The PLRA's exhaustion requirement applies to all inmate suits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. The Court, in determining whether a prisoner has properly exhausted administrative remedies, must evaluate the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials. Spruill, 372 F.3d at 222.[12] "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000).

The PLRA exhaustion requirement contemplates that the prisoner is responsible for bringing a grievance to the attention of the appropriate prison official so that the official has an opportunity to respond to the grievance before resorting to the court system. Spruill, 372 F.3d at 227 (citation omitted); see Porter, 534 U.S. at 524-25 (indicating PLRA "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"). Moreover, after bringing an initial complaint, the prisoner must

---

[12] The PLRA's exhaustion requirement applies to grievance procedures set forth in a New Jersey Department of Corrections ("NJDOC") inmate handbook, even if that handbook is not formally adopted by a state administrative agency. Concepcion v. Morton, 306 F.3d 1347, 1355 (3d Cir. 2002).

carry the grievance through any available appeals process before filing suit. <u>Nyhuis</u>, 204 F.3d at 67. As such, a prisoner has not exhausted administrative remedies until the prisoner has pursued a grievance through each level of appeal available within the prison system. <u>Spruill</u>, 372 F.3d at 232.

    **B.**    **The PLRA's Application to the Plaintiff**

The PLRA's exhaustion requirement applies only to "prisoners" who were in custody at the time they filed their original complaint in federal court. 42 U.S.C. § 1997e(a); <u>see</u> <u>Ahmed v. Dragovitch</u>, 297 F.3d 201, 210 (3d Cir. 2002) (affirming district court's denial of plaintiff-former prisoner's motion to amend where plaintiff was a prisoner at time he filed original complaint). The PLRA defines "prisoners" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Here, the plaintiff filed his complaint on October 4, 2004, while he was either incarcerated at NJSP or BSP. Therefore, the PLRA's exhaustion requirement applies to the plaintiff's section 1983 claims.

    **C.**    **Whether the Plaintiff Exhausted Administrative Remedies**

The defendants contend that the plaintiff has "provided no evidence that he complied with the Grievance Process as outlined

10

in the Inmate Handbook." (Tirado Br., at 13.) The defendants have the burden to demonstrate that the plaintiff failed to exhaust his administrative remedies. Kounelis, 2005 WL 2175442, at *6. The defendants have satisfied this burden, and the plaintiff has failed to provide any contrary information or documentation that he did exhaust his administrative remedies before bringing this action.

The defendants point out that the plaintiff received a copy of the Inmate Handbook while incarcerated at MCCI. The Inmate Handbook includes a grievance procedure, which requires inmates to first submit grievances to an officer. (Koch Cert., at ¶ 7 & Ex. F, Monmouth County Sheriff's Office, Department of Corrections, Inmate Handbook ("Inmate Handbook"), at 34-35.)[13] If the officer is unable to resolve the grievance, the grievance is referred to "the next appropriate supervisor for resolution." (Id. at 35.) "Upon recei[ving] the grievance the supervisor shall attempt to settle the grievance and give written response to the inmate regarding the decision made, or the inability to make a decision at the supervisory level." (Id.) If the supervisor is unable to resolve the grievance, the supervisor "shall" refer the grievance to the "next level or Department

---

[13] Although not included as a part of the grievance procedure, the Inmate Handbook provides that the prisoners have "[t]he right to receive [a] written response [to the grievance] including the reason for the decision, within five (5) calendar days (excluding weekends and holidays)." (Id. at 34.)

11

Head."  (Id.)   Beyond the Department Head, there are two further levels of authority for the grievance to reach.  (Id.)  Once a decision has been made along the aforementioned chain of command, the prisoner may appeal the decision to the Deputy Warden.  (Id.)

The plaintiff does not deny — in the complaint, the Letters, or his deposition — the existence of the grievance procedure set forth in the Inmate Handbook.  Instead, the plaintiff (1) acknowledged receiving and reviewing the Inmate Handbook, (2) cited to the Inmate Handbook on two occasions in the Letters, and (3) admitted to filing grievances at MCCI — unrelated to the alleged assault — both before and after the incident.  (Pl. Dep. Tr., at 27, 93-96; the Letters.)  The plaintiff claims in the complaint and in the Letters that he filed a grievance regarding the alleged assault.  However, the plaintiff — in part of the complaint — responded to the question "Have you exhausted available administrative remedies" by marking the box labeled "No" and further explained "I don't know why but I have filed criminal charges since I am not getting any administrative remedies."  (Compl., at 5.)  The defendants argue that this statement by the plaintiff demonstrates that he failed to exhaust his administrative remedies.

The plaintiff has not come forth with any argument or evidence to contradict his statement in the complaint that he did not exhaust his administrative remedies.  The plaintiff did not

indicate during his deposition that he filed a grievance about the assault or exhausted his administrative remedies.  Also, the plaintiff's letters to Internal Affairs and to Captain Bongiovi do not demonstrate that the plaintiff exhausted available administrative remedies.  The plaintiff has indicated that he was aware of the grievance procedures, and the Letters do not amount to substantial compliance with MCCI's grievance procedure.  Moreover, the plaintiff has not argued that (1) "prison officials precluded him from filing administrative requests or appeals so that the defendants are estopped from raising exhaustion as an affirmative defense," or (2) the procedures were unclear, possibly "creating special circumstances to justify excusing the exhaustion requirement."  See Ramos v. Smith, No. 04-249, 2005 WL 3054291, at *5 (E.D. Pa. Nov. 14, 2005) (pointing out that Third Circuit Court of Appeals "has concluded that dismissal or summary judgment under [section] 1997e(a) is inappropriate when prison officials have misled or otherwise precluded the inmate from filing or exhausting prison grievance procedures").  Thus, the plaintiff has proffered no evidence that he exhausted his administrative remedies.  Accordingly, the defendants have shown that the plaintiff failed to exhaust his administrative remedies before filing the complaint.

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, concludes that the defendants have demonstrated that the plaintiff failed to exhaust his administrative remedies as required by the PLRA.  Therefore, the Court will (1) grant (a) Tirado's motion without prejudice to the extent that it seeks summary judgment in his favor for failure to exhaust administrative remedies, and (b) Hunnenloch and Valentino's separate motions without prejudice; and (2) enter judgment in their favor.  The Court also denies as moot the part of Tirado's motion seeking summary judgment for the plaintiff's alleged failure to provide evidence that Tirado assaulted him on August 24, 2004.  The Court will issue an appropriate order and judgment.

      s/ Mary L. Cooper
      **MARY L. COOPER**
      United States District Judge